# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

--------------------------------

                               :

Relda WOMBLE,                :

                               :

          Plaintiff,    :     Civ. No. 06-01738(DRD)

      v.               :

                               :     **O P I N I O N**

                               :

COMMISSIONER OF THE SOCIAL   :

SECURITY ADMINISTRATION,    :

                               :

         Defendant.    :

--------------------------------

Lawrence E. Kazmierczak, Esq.
Kazmierczak & Kazmierczak, LLP
Northeast New Jersey Legal Services
152 Market Street
Patterson, New Jersey 07505
    Attorney for Plaintiff

Christopher J. Christie
Unites States Attorney
By: Andreea L. Lechleitner
    Special Assistant U.S. Attorney
C/O Social Security Administration
Office of the General Counsel
26 Federal Plaza, Room 3904
New York, New York 10278-0004
    Attorney for Defendant

1

**DEBEVOISE, Senior District Judge**

Plaintiff, Relda Womble ("Plaintiff"), appeals from a final determination of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act ("SSA"). Plaintiff contends that the Administrative Law Judge's ("ALJ") determination to deny her request for DIB was not supported by substantial evidence showing that her impairments did not medically meet or equal a Listing in Appendix 1, Subpart P, Regulation 4 ("Listing(s)"). For the reasons set forth below, the Commissioner's determination is affirmed.

**I.    FACTS AND PROCEDURAL HISTORY**

Plaintiff, Relda Womble, a 45-year old woman, suffers from several ailments including asthma, hypertension, breast cancer and depression. She has a long medical history pertaining to these ailments. Plaintiff left her job as a nurse's aid on January 29, 1996 due to hospitalization for her asthma problems. (R. at 826)[1]. Subsequently, on February 28, 1998, Plaintiff applied for DIB alleging disability due to asthma and breast cancer.

Plaintiff's application was denied during a December 2000 hearing by ALJ Borda. (R. at 46-48). Plaintiff filed a request

─────────────

[1]"R" refers to underline record at.

2

for review of ALJ Borda's decision and the Appeals Council remanded the decision to the ALJ for further proceedings and a new decision. (R. at 75-78). During this time, Plaintiff submitted a separate application for DIB. Plaintiff's second application was ultimately consolidated with her prior 1999 claim.

Plaintiff's case was heard on remand by ALJ Joel H. Friedman ("ALJ Friedman") on January 4, 2005. (R. at 820-866). During the remand hearing, ALJ Friedman heard testimony by Plaintiff and Mr. Rocco Meola ("Meola"), a vocational expert who analyzed Plaintiff's residual functional capacity ("RFC"). Id. at 852. On October 13, 2005, ALJ Friedman submitted an opinion which denied Plaintiff DIB. (R. at 33-34). ALJ Friedman opined that although Plaintiff's asthma, hypertension and substance abuse were severe, the ailments did not meet or medically equal one of the listed impairments in the Listings. (20 C.F.R. Pt. 404, Subpt. P). Additionally, ALJ Friedman found that Plaintiff obtained the RFC to perform a significant range of sedentary work. (R. at 29,34). ALJ Friedman stated that Plaintiff was capable of performing sedentary work involving: lifting and carrying objects weighing up to 10 pounds; sitting up to 6 hours and standing and walking up to 2 hours in an 8-hour day; and sedentary work with occasional postural and concentrated environmental limitations. (R. at 31,34).

3

On October 25, 2005, Plaintiff filed a Request For Review of Hearing Decision with the Appeals Council. (R. at 19). The Appeals Council, in reviewing Plaintiff's case, upheld ALJ Friedman's decision. (R. at 15). Pursuant to 20 C.F.R. § 416.1481, the Appeals Council denial of Plaintiff's claim for DIB made ALJ Friedman's decision final within the Social Security Administration. As a result, this action followed.

## II.   EVIDENCE BEFORE THE ALJ

Evidence before the ALJ consisted of Plaintiff's testimony, medical records, and the opinion of Mr. Meola.

### A.   Plaintiff's Testimony

At the 2005 hearing in Hackensack, New Jersey, Plaintiff testified before ALJ Friedman. (R. at 820). Plaintiff testified that at the time of the hearing she was a single mother with a limited high school education ending in the 11th grade. (R. at 828). Plaintiff is living on a welfare allowance of $73 a month and receives food stamps and Medicaid. (R. at 832-833). Plaintiff's last job was as a nurse's aid. She stated that she left work because she was hospitalized for an asthma attack and, upon return, there "was no more job". (R. at 835). Plaintiff testified that she is unable to work due to her asthma, forgetfulness and depression. (R. at 829). Plaintiff admits that she was a habitual cigarette smoker and a substance abuser but has not engaged in either activity in about one year. (R. at 831-

4

832, 848-849). Plaintiff stated that her typical day involved
making her breakfast, taking her medications, sitting and reading
the Bible and occasionally attending a Narcotics Anonymous ("NA")
meeting with a friend if it was not too far to walk. (R. at 36).

Plaintiff testified as to several of her ailments. She
stated that she suffers from asthma attacks which are triggered
by various environmental exposures and also by stress. (R. at
843-844). The asthma attacks occur about one to two times per
week and Plaintiff had visited the emergency room three times
within the past year. (R. at 829).

Additionally, Plaintiff testified as to her history of
breast cancer. (R. at 838-843, 848). Plaintiff stated that as a
result of both mastectomies and the related axillary surgeries,
she experienced pain in her chest when she breathed in or
attempted to lift objects. The onset of pain would last about
five to ten minutes and usually occurred about two times a week.
Plaintiff testified that she usually does not have to seek
medical help but will visit the emergency room if the pain does
not subside. (R. at 841-842). Plaintiff also stated that she is
currently receiving chemotherapy once a month. (R. at 843).

In reference to Plaintiff's hypertension, she testified that
she sometimes becomes lightheaded and dizzy and that she lets the
"little things stress her out". (R. at 847). As a result of her
ailments, she testified that she had difficulty in walking long

distances (R. at 837), cannot sit down for longer than one hour (R. at 838,851), and frequently drops things from her hands because they "give out on her" (R. at 838).

Plaintiff testified as to her mental health history. Plaintiff stated that she started seeing Dr. Dicovsky, a psychiatrist, about two years ago and continued treatment with him. (R. at 835). She testified that her next appointment was January 18, 2005. (R. at 835). Plaintiff testified that she had started seeing Dr. Dicovsky because she was depressed and frequently talking to herself. (R. at 848).

Plaintiff testified that she is currently taking Albuterol Sulfate, CPAP Machine, Flovent, Singulair and a Nebulizer for her asthma. Plaintiff is also taking Micardis and Hydrochlorothiazide for hypertension, Risperdal for depression, Tramadol for pain, and Nexium for her peptic ulcer. (R. at 33-35).

B.   Medical Records:

The following medical records reflect doctors' treatment or examination of Plaintiff between May 1998 and February 2005.

1.   Dr. Osvaldo Fulco

Dr. Osvaldo Fulco is an independent medical expert ("IME") and board-certified physician specializing in pulmonary diseases. (R. at 443). Dr. Fulco evaluated Plaintiff's medical records. (R. at 443). Dr. Fulco stated in his evaluation that he was familiar with the Listings promulgated by the Commissioner as well as the

6

concept of meeting or equaling a Listing. (R. at 444-445). Dr.
Fulco evaluated Plaintiff's impairments under Listing 3.03
(Asthma). (R. at 445). From Plaintiff's medical records, Dr.
Fulco found that Plaintiff suffered from following: carcinoma of
the breast, post left mastectomy; a history of cocaine-crack
abuse; a history of bronchial asthma; and episodes of chest pain.
(R. at 445-446). Additionally, Dr. Fulco found that, although
Plaintiff did not medically meet or equal a Listing, she did have
limitations in the type of work she could perform. He found that
her RFC involved: standing/walking up to 2 hours in an 8 hour
day; sitting for up to 6 hours; lifting/carrying up to 10 pounds;
no climbing, pushing, or pulling; and avoiding exposures to dust,
fumes, and extreme temperatures. (R. at 449). Dr. Fulco stated
that Plaintiff's impairments were moderate. (R. at 449).

      2.   Disability Determination Services Physicians ("DDS Physicians")

          a.  Dr. Michael Pollack

      Dr. Michael Pollack, a State employed physician, examined
Plaintiff on February 11, 1999. Dr. Pollack noted during the
physical examination that Plaintiff was ambulating without
difficulty and had no difficulty arising from the chair, getting
on and off the examination table, and opening her gown for
examination. (R. at 219). Dr. Pollack also stated that
Plaintiff's cranial nerves were intact and her motor examination

was within normal limits. (R. at 219). He diagnosed Plaintiff with asthma, hypertension, and left breast carcinoma. Dr. Pollack stated that Plaintiff's prognosis was fair. (R. at 220).

### b.   Dr. Buski

Dr. Buski, a State employed physician, evaluated Plaintiff concerning her physical RFC on February 24, 1999. Dr. Buski determined that Plaintiff could occasionally carry up to 20 pounds; frequently carry up to 10 pounds; stand and/or walk about 6 hours in an 8-hour workday, and sit for about 6 hours in an 8-hour workday; and had unlimited ability to push and/or pull. (R. at 232). Dr. Buski also was of the opinion that Plaintiff should avoid concentrated exposure to extreme heat and cold, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation. (R. at 235). Dr. Buski made this evaluation without a treating source's statements regarding the claimant's physical capacities on file. (R. at 237).

### c.   Dr. Phillips

Dr. Phillips, a State employed physician, completed Plaintiff's physical RFC assessment on October 30, 2001. He opined that, based on Plaintiff's medical records, she had various limitations. Dr. Phillips stated that Plaintiff could occasionally carry up to 20 pounds; frequently carry up to 10 pounds; stand and/or walk up to 6 hours in an 8 hour day and sit for up to 6 hours in an 8-hour day; and had unlimited ability to

8

push and/or pull. (R. at 769). Dr. Phillips also found that
Plaintiff should avoid concentrated exposure to extreme heat or
cold, wetness, humidity, fumes, odors, dusts, gases, and poor
ventilation. (R. at 772).

> 3.   Claudio Dicovsky Medical Group

On May 21, 2002, Plaintiff went to Dr. Claudio
Dicovsky, a psychiatrist, because she was frequently talking to
herself and had mild suicidal illusions. (R. at 457-458). She
stated that she had not abused drugs in one year and drank a beer
occasionally. (R. at 458). During this visit, Dr. Dicovsky
diagnosed Plaintiff with mild schizophrenia ("GAF"[2] at 70). (R.
at 460).  Plaintiff continued to see Dr. Dicovsky on a monthly
basis until October 24th, 2002. During those six months,
Plaintiff complained of auditory hallucinations, excessive
talking to oneself and suicidal illusions. (R. at 454-460). Dr.
Dicovsky prescribed Risperdal for Plaintiff's depression during
their October session. Plaintiff did not return to Dr. Dicovsky's
office until February 26, 2003. Plaintiff stated she had been on
a vacation "down south". (R. at 455). Upon her return, Plaintiff

---

[2]"GAF" refers to the Global Assessment of Functioning. It is
a numeric scale (0-100) used by mental health professionals and
doctors to rate the social, occupational and psychological
functioning of adults. A range of 61-70 involves "some mild
symptoms or some difficulty in social, occupational, or school
functioning but generally functioning pretty well and has some
meaningful interpersonal relationships." Diagnostic and
Statistical Manual of Mental Disorders, Fourth Edition, Text
Revision ("DSM-IV-TR"), (2000).

again complained of auditory hallucinations and suicidal illusions. (R. at 455). Plaintiff's last documented session with Dr. Dicovsky was July 29, 2003 at which he recorded that Plaintiff had been drinking and abusing drugs. Dr. Dicovsky diagnosed Plaintiff with poly-substance abuse and advised her to attend NA meetings.  (R. at 454.)

    C.   <u>Mr. Rocco Meola</u>

Mr. Meola is a vocational expert. He testified at the January 2005 remand hearing concerning what jobs, if any, Plaintiff could perform.  Mr. Meola testified that he was familiar with various terms that the Administration used to define work ability. (R. at 852). He stated that Plaintiff had worked as a nurse's aid from 1982 to 1993. The job was unskilled and did not require special training. (R. at 854). Mr. Meola testified that based on Plaintiff's current limitations, she could not perform her past relevant work. (R. at 855).

During the hearing, ALJ Friedman posed various hypotheticals to Mr. Meola regarding Plaintiff's ability to work. (R. at 855-861). Mr. Meola testified that Plaintiff's depression would not have an impact on simple, routine work. (R. at 859). Based on Plaintiff's age (20 C.F.R. § 416.963(c)), education (20 C.F.R. § 416.964(b)(4)), and physical limitations (R. at 768-775), Mr. Meola opined that there was light and sedentary work in the region which Plaintiff could perform. (R. at 856). The named

10

occupations included: final inspector, labeling machine operator, parts sorter, surveillance system monitor, inspector, and assembler. (R. at 857-858).

In the Northern New Jersey region, approximately 1,500 jobs existed for light work and approximately 1,200 jobs existed for sedentary work. Across the nation, about 60,000 jobs existed for light work and about 45,000 jobs existed for sedentary work.(R. at 857-858).

Mr. Meola testified that if Plaintiff had to avoid moderate amounts of exposures to extreme environmental limitations, it would cut Plaintiff's job listing in half (R. at 858-859), but if Plaintiff had to avoid all exposures to environmental limitations, she would not be able to perform any type of work. (R. at 861).

## III. ADMINISTRATIVE DECISION/FINDINGS

After reviewing the above-referenced evidence, the ALJ made the following findings in his written decision:

> 1.   The Plaintiff is not engaged in substantial gainful activity since the alleged onset of disability.
>
> 2.   The Plaintiff's asthma, hypertension, and substance abuse are considered "severe" based on the requirements in the Regulations 20 C.F.R. § 416.920(c)).
>
> 3.   These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4.    The Plaintiff's allegations regarding her
      limitations are not totally credible for the
      reasons set forth in the body of the decision.

5.    The Plaintiff has the following residual
      functional capacity: sedentary work not involving
      occasional postural and environmental limitations.

6.    The Plaintiff has no past relevant work (20 C.F.R.
      § 416.965).

7.    The Plaintiff is a "younger individual between the
      ages of 18 and 44" (20 C.F.R. § 416.963).

8.    The Plaintiff has "a high school (or high school
      equivalent) education" (20 C.F.R. § 416.964).

9.    The Plaintiff has the residual functional capacity
      to perform a significant range of sedentary work
      involving lifting and carry objects weighing up to
      10 pounds; sitting up to six hours, and standing
      and walking up to two hours in an eight-hour day;
      and sedentary work with occasional postural and
      environmental limitations.

10.   Although the Plaintiff's exertional limitations do
      not allow her to perform the full range of
      sedentary work, using Medical-Vocational Rule
      201.27 and 201.24 as a framework for decision-
      making, there are significant numbers of jobs in
      the national economy that she could perform.
      Examples of such jobs include work as a
      surveillance monitor, inspector (parts),
      assembler, sorter, and sample maker.

## IV.  <u>DISCUSSION</u>

Plaintiff contends that the ALJ's decision is not supported

by substantial evidence. Plaintiff asserts three reasons for this

contention: (1) The ALJ never determined if Plaintiff's

limitations equaled Listing 3.03(B). (2) The ALJ erred when he

found that Plaintiff's mental illness was not a severe impairment

without obtaining her medical records. (3) The ALJ failed to weigh the state agency doctor's opinion before relying on it to reject the IME's conflicting opinion and to support his RFC assessment. Plaintiff also claims that she equals the Listing 3.03(B) due to her combination of impairments.

A.   Standard of Review

For an adult to be considered disabled, he must have "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Barnhart v. Thomas, 540 U.S. 20, 22 (2003).

In order to determine whether or not Plaintiff is eligible for DIB, the ALJ must follow the five specific steps outlined in 20 C.F.R. § 416.920(a)(4):

> 1.   At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (See paragraph (b) of this section).
>
> 2.   At the second step we consider the medical

13

severity of your impairment(s). If you do not have
a severe medically determinable physical or mental
impairment that meets the duration requirement in
§ 416.909, or a combination of impairments that is
severe and meets the duration requirement, we will
find that you are not disabled. (See paragraph (c)
of this section.)

3.    At the third step, we also consider the medical
      severity of your impairment(s). If you have an
      impairment(s) that meet or equals one of our
      listings in appendix 1 to subpart P of part 404 of
      this chapter and meets the duration requirement,
      we will find that you are disabled. (See paragraph
      (d) of this section.)

4.    At the fourth step, we consider our assessment of
      your residual functional capacity and your past
      relevant work. If you can still do your past
      relevant work, we will find that you are not
      disabled. (See paragraph (f) of this section and §
      416.960(b).)

5.    At the fifth and last step, we consider our
      assessment of your residual functional capacity
      and your age, education, and work experience to
      see if you can make an adjustment to other work.
      If you can make an adjustment to other work, we
      will find that you are not disabled. If you cannot
      make an adjustment to other work, we will find
      that you are disabled. (See paragraph (g) of this
      section and § 416.960(c).)

B.   <u>Sufficiency of Evidence</u>

      The Commissioner's findings as to Plaintiff's disability

shall be conclusive if supported by substantial evidence. 42

U.S.C.A. § 405(g). Substantial evidence is "more than mere

scintilla. It means such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion after reviewing

the entire record . . . " <u>Richardson v. Perales</u>, 402 U.S. 389,

14

401 (1971). The Commissioner's decision must be upheld if, upon reviewing the record as a whole, a reasonable mind would find adequate support for the Commissioner's conclusion. <u>Rodriguez v. Secretary of Health and Human Services</u>, 647 F.2d 218, 222 (1st Cir. 1981), citing <u>Consolidated Edison Co., v. NLRB</u>, 305 U.S. 197, 229, (1938).

Resolutions of conflicts in evidence, including medical evidence, and the determination of disability is the Commissioner's task. <u>Richardson</u>, 402 U.S. at 399. However, if the Commissioner's decision is not supported by substantial evidence, this court has the power to modify or reverse it. 42 U.S.C. § 405(g).

At step one, the ALJ must determine whether Plaintiff is engaged in substantial gainful work activity. Substantial gainful work activity is work activity which involves doing significant physical or mental activities for pay or profit. 20 C.F.R. § 416.972.

It is undisputed that Plaintiff is not currently engaged in substantial gainful activity nor has she been since 1998, the date of her last employment as a nurse's aid. (R. at 24).

At step two, the ALJ must determine the severity of Plaintiff's impairments. An impairment is severe if it significantly limits a plaintiff's physical and mental ability to do basic work activities. 20 C.F.R. § 416.920(c).

Plaintiff argues, in Point II of her brief, that ALJ Friedman erred when he found that Plaintiff's mental illness was not a severe impairment without further obtaining Plaintiff's medical records. (Pl. Brief at 19). Plaintiff avers that ALJ Friedman did not perform his duty of completing the medical records concerning plaintiff's mental impairments. Plaintiff posits that ALJ Friedman erred when he stopped his analysis at the July 2003 appointment notes for Dr. Dicovsky. (Pl. Brief at 19).

At step two of 20 C.F.R. § 416.920, "the burden lies with the [Plaintiff] to develop the record regarding her disability because the [Plaintiff] is in a better position to provide information about her own medical condition." Money v. Barnhart, 91 Fed. Appx. 210 *citing* Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The ALJ's duty, in this regard, is to make sure that the Plaintiff's complete medical record is developed before determining that the Plaintiff is not disabled. 20 C.F.R. § 416.912(d). A "complete medical record'" has been defined as the records of the claimant's medical sources for at least the twelve months *preceding* the time when the Plaintiff filed the application for disability benefits. 20 C.F.R. § 416.912.

The record contains Plaintiff's medical records dating back to 1996, almost two years prior to Plaintiff's 1998 application for DIB. (R. at 179). Accordingly, since the ALJ hearing was

16

January 4, 2005, ALJ Friedman has met his duty to obtain a complete medical record under 20 C.F.R. § 416.912(d)(2).  The record, however, contains Plaintiff's medical records updated to February 2, 2005, a significant amount of time beyond when Plaintiff filed for disability. (R. at 573). The ALJ's determination shows that he reexamined the record when making his findings.

In addition, the majority of the medical records from years 2004 and 2005 are associated with Plaintiff's right breast mastectomy and axillary node dissection. (R. at 499-585). According to Plaintiff's testimony, she was still seeing Dr. Dicovsky and had an appointment with him for January 18, 2005. (R. at 835). However, the medical records prove otherwise. Plaintiff's psychiatric appointment notes with Dr. Dicovsky end as of July 2003. (R. at 454). There is no documentation of Plaintiff's alleged appointments with Dr. Dicovsky after that point.

In addition, ALJ Friedman properly concluded that the evidence before him was sufficient to rule out Plaintiff's mental impairment as being severe. (R. at 28). The ALJ has a duty to obtain additional evidence to determine whether the Plaintiff is disabled if the evidence is *insufficient* to make a determination. 20 C.F.R. § 416.927(c)(3). ALJ Friedman looked to Dr. Dicovsky's psychiatric notes in determining the severity of Plaintiff's

mental impairments. Dr. Dicovsky reported, on Plaintiff's last recorded appointment of July 29, 2003, that she suffered from poly-substance abuse and his recommendation was for her to seek help through Narcotics Anonymous meetings. He also proscribed Risperdal for her depression. There was no mention of the diagnosis of mild schizophrenia which he diagnosed in May 2002 (R. at 454,460). Furthermore, two Department of Labor physicians separately determined that Plaintiff's cranial nerves were intact and that Plaintiff was alert and oriented. (R. at 735, 752). ALJ Friedman properly determined the evidence before him was sufficient to rule out mental impairment as a severe impairment.

At step three, the ALJ must determine whether Plaintiff's severe impairments medically meet or equal a Listing. It is undisputed from the evidence that Plaintiff did not medically meet the criteria of a Listing. The record specifically points to Listing 3.03(A) and (B) concerning asthma. (R. at 25). Plaintiff was one asthma attack shy of meeting 3.03(B) during two separate periods and her FEV1 levels did not meet 3.03(A). (R. at 756-762). Furthermore, Plaintiff's other ailments failed to meet their respective Listings, specifically breast cancer (13.03), hypertension (4.00) and substance abuse (12.00). (R. at 25).

In Point I of her brief, Plaintiff alleges that ALJ Friedman did not properly review whether Plaintiff *equaled* a Listing by evaluating Plaintiff's combination of impairments (Pl. Brief at

18

18). 20 C.F.R. § 416.926.

In <u>Cotter v. Harris</u>, 642 F.2d 700, 704-05 (3d Cir. 1981), the court set aside an ALJ's determination because the ALJ "merely stated a summary conclusion that appellant's impairments did not meet or equal any Listed Impairment," without identifying the relevant listed impairments, discussing the evidence or explaining his reasoning. "Such a bare conclusion is beyond meaningful judicial review." <u>Burnett v. Commissioner of SSA</u>, 220 F.3d 112, (3d Cir. 2000) (*citing* <u>Cotter v. Harris</u>). Plaintiff relies on <u>Burnett</u> and <u>Cotter</u> and states that the ALJ's decision was "beyond judicial review". (Pl. Brief at 18).

In <u>Jones v. Barnhart</u>, 364 F.3d 501, 505 (3d Cir. 2004), the Court of Appeals modified the <u>Burnett</u> standard. The court stated that "<u>Burnett</u> does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of <u>Burnett</u> is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." The ALJ in <u>Jones</u> satisfied the <u>Burnett</u> standard by discussing the evidence pertaining to claimant's impairments, pointing to the lack of complications with said impairments and establishing a lack of frequent hospitalizations or emergency treatments. <u>Id.</u> at 505.

Similar to <u>Jones</u>, ALJ Friedman properly evaluated the evidence and determined that Plaintiff's combination of

19

impairments did not equal a Listing, specifically Listing 3.03(B). (R. at 25). This is evidenced by his references throughout his opinion to Plaintiff's various impairments. ALJ Friedman considered the medical evidence and specifically evaluated and described his findings pertaining to Plaintiff's asthma, breast cancer, hypertension and mental impairments separately throughout his opinion. (R. at 26-28, 30-32). He also reviewed the evidence of her doctor's appointments and emergency visits throughout the relevant period. (R. at 26-28). ALJ Friedman also specifically stated that Plaintiff's impairments, singly or in combination, did not medically meet or equal a Listing, specifically Listing 3.03(B). (R. at 25).

Concerning Plaintiff's breast cancer, ALJ Friedman correctly determined that Plaintiff experienced two breast mastectomies, one in 1996 and the other in 2004. (R. at 30). He also concluded that despite the initial left breast mastectomy and the recurrence in the right breast, Plaintiff was free of metastases. (R. at 30). The ALJ cited to several radiation scans which Plaintiff underwent to rule out carcinoma in other parts of her body. (R. at 30, 574-578). Additionally, ALJ Friedman noted that Plaintiff did not complete the required eight cycles of chemotherapy. (R. at 30, 294).

ALJ Friedman determined that Plaintiff's hypertension has been uncontrolled mostly during instances where Plaintiff needed

20

a refill of her blood pressure medications. (R. at 30–31). He determined that while Plaintiff's blood pressure readings have been elevated at times, the most current medical records have shown a decrease in her blood pressure readings. Plaintiff's blood pressure readings after June 2002 have been within the normal blood pressure ranges, if not lower. Plaintiff's blood pressure readings during this period include: 120/60 in December 2002, 112/70 in June 2003, and 110/70 in February 2004. (R. at 482-495).

As a result of the above-mentioned determination, Plaintiff's argument that her impairments equal Listing 3.03(B) are unpersuasive. Pursuant to 42 U.S.C.A. § 405(g), the District Court's must determine whether there is substantial evidence to support the ALJ's factual findings. This issue was resolved when it was determined that the ALJ properly decided the question of whether Plaintiff's impairments equaled Listing 3.03(B).

At the fourth step, the ALJ must make two determinations. First, the ALJ must determine whether Plaintiff has any past relevant work. Past relevant work is defined as "work that [Plaintiff] has done within the past 15 years, that was substantial gainful activity, and lasted long enough for [Plaintiff] to learn to do it." 20 C.F.R. § 416.960(b)(1). If the Plaintiff is found to have no past relevant work, the ALJ will assess the Plaintiff's RFC. RFC is the most [work the plaintiff]

21

can still do despite [his/her physical and mental] limitations. 20 C.F.R. §416.945(a)(1). The RFC will be used in step five to determine whether Plaintiff can make an adjustment to other types of work based on her age, education, and work experience.

Plaintiff argues at step four, that ALJ Friedman failed to weigh the DDS physicians' opinions before relying on them to reject the IME's conflicting opinion to support his RFC assessment. (Pl. Brief at 20).

The ALJ considers and weighs the medical opinion evidence together with the rest of the record. 20 C.F.R. § 416.927(b). In weighing medical opinion evidence, the ALJ must balance several factors to decide what weight to accord to certain medical opinions. 20 C.F.R. § 416.927(d). A few of the factors considered during this process are examining relationship, treatment relationship, length of treatment, frequency of examination, the nature and extent of the relationship, supportability by the evidence on record, consistency with the evidence on record, and specialization of the examining or medical opinion. 20 C.F.R. § 416.927(d). After the ALJ reviews the relevant medical opinions and evidence, the ALJ will make a decision as to what the record shows. 20 C.F.R. § 416.297(c).

It is undisputed that Dr. Yuzon, Plaintiff's treating physician, was not included in the RFC analysis. (R. at 28-29). During the hearing, ALJ Friedman evaluated the medical opinion

evidence of various physicians regarding Plaintiff's RFC. (R. at 29,31). Among these physicians were DDS physicians Dr. Buski, Dr. Pollack, Dr. Phillips and Dr. Wein, and IME Dr. Fulco (R. at 29,31). ALJ Friedman reviewed the relevant opinions among the four physicians along with the evidence on record and determined, pursuant to 20 C.F.R. § 416.927(c)(1), that the medical opinion evidence was consistent with one another. As a result, ALJ Friedman determined that Plaintiff was not disabled.

Plaintiff contends that ALJ Friedman did not weigh the DDS physicians' evidence before rendering a decision of not disabled. (Pl. Brief at 20). The findings of the record, however, are to the contrary. ALJ Friedman specifically sets out, during his opinion, that he looked at the various physicians' reports, and accorded weight accurately. (R. at 29,31). He states specifically that he did not reject Dr. Fulco's opinion but in turn found that it was consistent with the evaluations of Dr. Buski, Dr. Pollack, Dr. Wein and Dr. Phillips. (R. at 29,31).

Furthermore, we have concluded that the physicians' reports speak for themselves concerning the consistency of the evidence. For instance, Dr. Buski and Dr. Phillips, who examined Plaintiff two years apart, both opined that Plaintiff was limited to carrying 10 pounds, could stand, sit, and walk for up to 6 hours in an 8-hour workday and should avoid concentrated exposures to extreme temperatures of hot and cold, wetness, humidity, fumes,

odors, dusts, gases, and poor ventilation. (R. at 231-238, 768-775). Dr. Pollack examined Plaintiff in 1999 and opined that Plaintiff experienced "no difficulty arising from the chair, no difficulty getting on and off the examining table and no difficulty opening the gown for physical examination." (R. at 219). Additionally, when Dr. Wein examined Plaintiff in 2001, he stated that there was nothing in the work up that suggested the need for any significant disability. (R. at 736). Dr. Fulco's 2003 evaluation of Plaintiff agrees with that of the DDS physicians. Dr. Fulco in accord with the other opinions, stated that Plaintiff could only carry up to 10 pounds occasionally and could sit for up to 6 hours in an 8-hour workday. (R. at 449).

Moreover, the issue of the variations in Plaintiff's environmental limitations were properly evaluated by ALJ Friedman. Dr. Fulco stated that Plaintiff should *avoid exposure* to dust, fumes, and extreme temperatures. (R. at 449). He did not specify the quantity that Plaintiff should stay away from. The other evaluations by the various DDS physicians, particularly Dr. Buski and Dr. Phillips stated that Plaintiff should only avoid exposure to concentrated environmental limitations. Thus, the DDS opinions are consistent with Dr. Fulco's opinion. Dr. Fulco's generalized discretion to avoid *exposure* to environmental conditions does not clash with Dr. Buski and Dr. Phillips's more specific recommendation to avoid *concentrated* environmental

24

conditions.

Plaintiff alleges that ALJ Friedman rejected Dr. Fulco's opinion concerning her RFC analysis. Plaintiff points to <u>Cotter v. Harris</u>, 642 F.2d 700 (3d Cir. 1981). (Pl. Brief at 21-22). In Cotter, the court held that the ALJ has a duty to put forth an expression of the evidence considered which supports the ALJ's result as well as some indication of which evidence was rejected. Id. at 706.

The present case, however, does not involve conflicting evidence as did the case in <u>Cotter</u>. ALJ Friedman considered all of the above-mentioned medical opinion evidence when making his decision. ALJ Friedman never makes reference to rejecting Dr. Fulco's opinion during the RFC analysis. (R. at 29,31). <u>Cotter</u> dealt with the an outright rejection by the ALJ of expert testimony without explanation. This case involves a careful analysis and acceptance of all relevant medical opinion evidence.

Additionally, Plaintiff's argument that Dr. Fulco's opinion should be accorded more weight because he is a pulmonary specialist does not require that ALJ Friedman reject other medical evidence. The ALJ Friedman properly determined that the medical opinion evidence was consistent with each other. Therefore, an analysis of whether ALJ Friedman properly balanced each doctor's credentials is not necessary.

At the final step, the ALJ considers Plaintiff's RFC

combined with her age, education and work experience to determine whether Plaintiff can make an adjustment to perform other work. 20 C.F.R. § 416.920(a)(4). Plaintiff, at the time, was a younger woman with a limited high school education and no relevant work experience. The ALJ properly determined that Plaintiff could make an adjustment to other work. The ALJ determined, through the testimony of Mr. Meola, that Plaintiff was able to perform a significant amount of sedentary work in the Northern New Jersey region. Plaintiff could perform jobs such as surveillance monitor, inspector (parts), assembler, sorter, and sample maker. (R. at 34). Since Plaintiff could perform other types of work according to her RFC, ALJ Friedman found she was not disabled.

Separately, Plaintiff argues that ALJ Borda's failure to reach a decision concerning Plaintiff DIB is an abuse of discretion. Plaintiff claims that the abuse of discretion warrants DIB. (Pl Brief at 22). The job of a District Court judge concerning an appeal from the ALJ, is to review the record to determine whether the ALJ made his DIB finding by *substantial evidence*. Richardson, 402 U.S. 389, 401 (1971). It is not the job of the District Court to determine whether an administrative matter warrants a finding of DIB. Additionally, Plaintiff was afforded all legal remedies to pursue her DIB case through a remanded hearing. 20 C.F.R. § 416.1477.

**V. CONCLUSION**

For the foregoing reasons, the final determination of the Commissioner will be affirmed. An appropriate order will be entered.


 **/s/ Dickinson R. Debevoise**
Dickinson R. Debevoise, U.S.S.D.J.


Dated: July 11, 2007

27